**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01461-WJM

THE STATE OF COLORADO,

      Plaintiff,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER,
in his official capacity as Administrator of the U.S. Environmental Protection Agency;
U.S. ARMY CORPS OF ENGINEERS; and R.D. JAMES, in his official capacity as Assistant
Secretary of the Army for Civil Works,

      Defendants.

---

**UNOPPOSED MOTION TO INTERVENE**

---

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 24, Chantell and Michael Sackett ("the Sacketts") bring this unopposed motion to intervene as defendants to protect their interests in this litigation.

Plaintiff State of Colorado (Colorado) challenges the U.S. Environmental Protection Agency (EPA) and the U.S. Department of the Army's (Army) adoption of a final rule called the Navigable Waters Protection Rule ("Navigable Waters Protection Rule" or "2020 Rule"), defining "navigable waters" or "waters of the United States" under the Clean Water Act. Compl. ¶ 1; *see* 85 Fed. Reg. 22,250 (Apr. 21, 2020). Colorado has moved for a preliminary injunction against the Navigable Waters Protection Rule. ECF No. 24.

The Sacketts seek to intervene to defend the portion of the rule which defines "adjacent wetlands." *See* 33 C.F.R. § 328.3(c)(1) (effective June 22, 2020); 40 C.F.R. § 120.2(3)(i) (effective June 22, 2020).[1] The Sacketts have an interest in the Clean Water Act's regulation of their private property. That interest would be affected by this lawsuit and is not adequately represented by the existing parties. Therefore, the Sacketts are entitled to intervention as of right. Fed. R. Civ. P. 24(a). Alternatively, the Sacketts move for permissive intervention. Fed. R. Civ. P. 24(b).

The Sacketts submit their proposed Answer in Intervention, attached to this motion as Attachment 1, and their proposed Opposition to Colorado's Motion for Preliminary Injunction, as Attachment 2. Counsel for the Sacketts have conferred with counsel for the parties and report that this motion is unopposed. On that basis, the Sacketts waive reply and hearing and ask that the Court grant this motion prior to the June 22, 2020 deadline for opposition briefs to be filed in response to Colorado's Amended Motion for Preliminary Injunction, ECF No. 24, so that the Sacketts' proposed Brief in Opposition to Preliminary Injunction can be filed by that date, and so that they can be heard on the preliminary injunction motion as parties.

## D.C.COLO.LCIVR 7.1 CERTIFICATION

Counsel for the Sacketts certify that they conferred with the existing parties to determine their positions on this motion. Counsel for the Sacketts conferred with counsel for the Defendants on June 2, 2020, and were informed that Defendants take no position on the Sacketts' intervention.

---

[1] Subsequent references to the code of federal regulations without a date parenthetical are to this version of the regulations.

Counsel for the Sacketts conferred with counsel for Colorado between May 29, 2020, and June 2, 2020, and were informed that Colorado takes no position on the Sacketts' intervention.

## APPLICANTS

Chantell and Michael Sackett own a residential lot in Priest Lake, Idaho, that is the subject of an EPA jurisdictional determination and compliance order issued in 2008.[2] Sackett Decl. ¶¶ 3-9, and Exhibits A & B thereto. EPA asserted Clean Water Act authority over the lot on the ground that the property contains wetlands regulated under the Clean Water Act as "adjacent wetlands." Sackett Decl. ¶¶ 6-7, 9, and Exhibits A & B. The Sacketts' challenge to the compliance order and to the assertion of Clean Water Act authority over the lot was the subject of the Supreme Court's decision in *Sackett v. EPA*, 566 U.S. 120 (2012) (holding that federal district courts have jurisdiction under the Administrative Procedure Act to review EPA compliance orders as final agency actions). Following remand, the district court upheld EPA's assertion of regulatory authority. That decision is presently pending on appeal in the Ninth Circuit. *See Sackett v. EPA*, No. 19-35469 (9th Cir.). As a result of EPA's jurisdictional determination and compliance order, the Sacketts have been unable to build a home on their residentially zoned vacant lot for the last 13 years. Sackett Decl. ¶¶ 5-6, 10-11.

The administrative record of the compliance order demonstrates that the Sacketts' residential lot has no surface water connection to a jurisdictional water of the United States. Sackett Decl. ¶ 9, and Exhibits A & B. It is separated from the closest surface water by an impermeable artificial barrier (a road). Sackett Decl. ¶¶ 3-4, and Exhibits A & B.

---

[2] The compliance order was recently withdrawn, but the jurisdictional determination remains in force.

Under prior versions of the definition of "navigable waters" or "waters of the United States," the government has taken the position that the Sacketts' lot is subject to Clean Water Act regulation despite the lack of surface water connection. *See generally Sackett*, 566 U.S. 120.

In contrast, under the challenged Navigable Waters Protection Rule's definition of "adjacent wetlands," the Sacketts' property is excluded from agency authority under the Clean Water Act. Its lack of surface water connection to any other jurisdictional water and its separation from the closest surface water by an impermeable artificial barrier are features which preclude Clean Water Act jurisdiction under the new rule. *See* 33 C.F.R. § 328.3(c)(1); 40 C.F.R. § 120.2(3)(i). Colorado's challenge to the Rule, if successful, would undermine the exclusion of the Sacketts' property from Clean Water Act jurisdiction.

## BACKGROUND

## I.     The Clean Water Act and the Definition of "Navigable Waters"

The Clean Water Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. §§ 1311(a), 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." *Id.* § 1362(7). Although the Act defines "territorial seas," it does not otherwise define "waters of the United States." *Id.* § 1362(8). Nonexempt discharges require a permit from either EPA or the Army, such as a "dredge and fill" permit under 33 U.S.C. § 1344. Obtaining a dredge and fill permit from the Army takes an average of more than two years and $250,000 in consulting costs. *See Rapanos v United States*, 547 U.S. 715, 721 (2006). Once obtained, dredge and fill permits substantially limit how property encumbered by "navigable waters" can be used by its owner. *See generally*

Daniel R. Mandelker, *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018).

A person engaged in unpermitted, nonexempt discharges or permit violations may face citizen suits, administrative cease-and-desist and compliance orders, administrative penalties, civil actions for monetary civil penalties and injunctive relief, and criminal prosecution. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52-53 (1987). These severe burdens make it critically important that the regulated public know what is meant by "navigable waters."

There have been multiple attempts to define that term over the years. In 1986, the Army adopted an updated regulatory definition that stretched the term "navigable waters" to include all non-navigable wetlands "adjacent" (broadly defined as bordering, contiguous, or neighboring) to regulated tributaries and other regulated waters. *See* 33 C.F.R. § 328.3 (1987) (the 1986 Regulations); *id*. § 328.3(a)(7) & (c) (1987) (defining adjacent wetlands). That definition was challenged in court. In a fractured opinion, the Supreme Court invalidated the adjacent wetlands provision of the 1986 regulation as exceeding the scope of the statutory term "navigable waters." *Rapanos*, 547 U.S. 715. The four-Justice *Rapanos* plurality determined that the language, structure, and purpose of the Clean Water Act limit federal authority over non-navigable tributaries to "relatively permanent, standing or continuously flowing bodies of water" commonly recognized as "streams, oceans, rivers and lakes." *Id.* at 739 (cleaned up). The plurality also limited regulation of non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, such that they have an immediate surface water connection which renders the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy joined the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779-80 (Kennedy, J., concurring). Justice Kennedy wrote that wetlands could be analyzed under this standard, either standing alone or in combination with features similarly situated within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address *Rapanos*, EPA and the Army adopted new regulations (the 2015 Regulations) redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015). Several lawsuits challenged the 2015 Regulations. On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgment that the 2015 Regulations violated the Clean Water Act. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019). That court permanently enjoined and remanded the 2015 Regulations without vacatur. *Id*. at 1382-83. A short time later, partially in response to the decision in *Georgia v. Wheeler*, EPA and the Army published a regulation that repealed the 2015 Regulations and readopted the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019).

On April 21, 2020, EPA and the Army again sought to define the scope of "navigable waters" by publishing the regulation at issue in this case, the Navigable Waters Protection Rule. 85 Fed. Reg. 22,250 (Apr. 21, 2020). Among other things, the Navigable Waters Protection Rule redefines "adjacent wetlands," 33 C.F.R. § 328.3(a)(4); 40 C.F.R. § 120.2(1)(iv), as wetlands that abut or are flooded by other regulated waters, or are physically separated from such waters only

by natural barriers or by permeable artificial barriers. 33 C.F.R. § 328.3(c)(1)(i)-(iv); 40 C.F.R.

§ 120.2(3)(i)(A)-(D).

Significantly for the Sacketts' interest in this lawsuit, EPA had claimed since 2007 that

the adjacent wetland provision of the 1986 Regulations allows it to regulate the Sacketts' property

in Idaho as a "neighboring" wetland. Sackett Decl. ¶¶ 7, 9, and Exhibits A & B. In contrast, under

the Navigable Waters Protection Rule, the Sacketts' property is not federally regulated, because

although it is separated by an artificial barrier (an elevated road) from a tributary to Priest Lake,

that barrier is not permeable. Their property has no surface water connection to any surface water

that is subject to the Clean Water Act. Sackett Decl. ¶¶ 4, 9.

Thus, under the Navigable Waters Protection Rule, the Sacketts would be able to finally

build a home on their long-vacant lot without first obtaining permission from the Army. The

injunctive relief sought by Colorado would prevent that outcome, by preventing the Navigable

Waters Protection Rule from taking effect.

## II.     This Lawsuit

On May 22, 2020, Colorado filed this lawsuit to challenge EPA and the Army's adoption

of the Navigable Waters Protection Rule. Colorado alleges that the Rule's revised definition of

"waters of the United States" conflicts with the text of the Clean Water Act, contravenes Supreme

Court precedent, contradicts the Clean Water Act's objectives, and ignores sound science. Compl.

¶ 1. Colorado alleges that in promulgating the Navigable Waters Protection Rule, EPA and the

Army violated the Administrative Procedure Act and the National Environmental Policy Act.

Compl. ¶ 2. Colorado asks the Court to, among other things: declare that the Rule is unlawful;

vacate and set aside the Rule in its entirety; enjoin EPA and the Army from using, applying,

implementing, or enforcing the rule; and remand the matter to EPA and the Army to issue a new rule. Compl. at 45-46.

On June 1, 2020, Colorado filed an Amended Motion for Preliminary Injunction against the rule, seeking to prevent it from going into effect during the pendency of these proceedings. ECF No. 24.

## ARGUMENT

### I.     The Sacketts Satisfy Rule 24(a) and Should Be Granted Intervention as of Right

In applying Rule 24(a), the Tenth Circuit "follow[s] 'a somewhat liberal line in allowing intervention.'" *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009)). Thus, in the Tenth Circuit, an applicant may intervene as of right under Rule 24(a) when: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) the applicant's interest, may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties. *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. U.S. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (cleaned up); *see also* Fed. R. Civ. P. 24(a).

The Sacketts satisfy each element of the Rule 24(a) test and qualify for intervention as of right.

### A.     The Sacketts' Motion to Intervene Is Timely

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of unusual circumstances.'" *Utah*

*Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). The timeliness requirement is not a rigidly construed rule and "[f]ederal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). In *Utah Association of Counties*, the Tenth Circuit found an intervention application timely even though it was filed two and half years after the complaint. *Id.*

The Sacketts' application is clearly timely. They have moved to intervene at the outset of this litigation. The Complaint was filed on May 22, 2020, and the Sacketts are filing this motion to intervene less than two weeks later. *See* ECF No. 1. No answer has been filed and no substantive matters have been ruled on. An amended motion for preliminary injunction, which also has the potential to significantly affect the Sacketts' interests, was filed on June 1, just two days prior to the filing of this motion. ECF No. 24; *see also* Attachment 2 (Sacketts' proposed opposition to preliminary injunction motion). Because the Sacketts have sought intervention so early, it will not prejudice any of the parties nor result in significant disruption or delay.

**B.  The Sacketts' Interests Relate to the Subject of This Litigation**

Although an applicant for intervention "must have an interest that could be adversely affected by the litigation," the Tenth Circuit has rejected the application of a bright line rule for determining what constitutes a significantly protectable interest. *San Juan Cty. v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc), *abrogated on other grounds*, *Hollingsworth v. Perry*, 570 U.S. 693, 697-711 (2013). The interest test is instead "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Utah Ass'n*, 255 F.3d at 1251-52 (quoting *Coal. of Ariz./N.M. Ctys.*, 100 F.3d at

841). Its "central concern . . . is the practical effect of the litigation on the applicant for intervention." *San Juan Cty.*, 503 F.3d at 1193. The Tenth Circuit has stated that courts may consider any significant legal effect on the interests of the applicant and are not bound by a rigid test. *See Coal. of Ariz./N.M. Ctys*, 100 F.3d at 840. Indeed, the Tenth Circuit has held that the mere threat of economic injury from the outcome of litigation is sufficient to support intervention. *See Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

The Sacketts have a significant interest in this litigation based on their ownership and use of private land which EPA and the Army have claimed contains regulated wetlands under the Clean Water Act. As discussed above, the Sacketts own a residential lot in Priest Lake, Idaho, which, prior to the Defendants' adoption of the Navigable Waters Protection Rule, was found subject to federal permitting authority under the Clean Water Act. Sackett Decl. ¶¶ 7, 9. Under the Navigable Waters Protection Rule, their property is not subject to such authority. However, should Colorado prevail in this litigation, and the Rule's definition of "adjacent wetlands" be enjoined or set aside, the Sacketts' property would again be subject to EPA and the Army's claim of permitting authority under the previous rules. Sackett Decl. ¶¶ 10, 14. The revival of the prior rule would have an immediate "practical effect" on their ability to use their property without a Clean Water Act permit. *See San Juan Cty.*, 503 F.3d at 1193.

For these reasons, the Sacketts have significant protectable interests in this action as private landowners. Indeed, because they are directly subject to the regulations at issue, their interests easily qualify them for intervention. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (noting that there is "ordinarily little question" of standing for the object of a regulation).

**C.      Disposition of This Case May Impair or Impede the Sacketts' Interests**

The threshold for demonstrating potential impairment of interests is low, as Rule 24(a)'s requirement addresses whether, as a practical matter, a denial of intervention would impede a prospective intervenor's ability to protect its interests. *See WildEarth Guardians*, 604 F.3d at 1199 (holding that the "impairment" element "presents a minimal burden").

As noted above, the Sacketts' interests may be impaired or impeded if they are denied intervention. If Colorado prevails and the Navigable Waters Protection Rule's definition of "adjacent wetlands" is enjoined or set aside, that will alter the regulations that govern the Sacketts' use of their property, to their detriment. As the Advisory Committee Notes to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 advisory committee note to 1966 amendment. In addition, the Tenth Circuit has stated that "the interest of a prospective defendant intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians*, 604 F.3d at 1199. This is precisely what will occur should Colorado prevail at any stage in this litigation.

**D.      No Party Adequately Represents the Sacketts' Interests**

The inadequate representation requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Indeed, "[t]he possibility that the interests of the applicant and the parties may diverge

'need not be great' in order to satisfy this minimal burden." *Utah Ass'n*, 255 F.3d at 1254 (quoting *Nat. Res. Defense Council v. U.S. Nuclear Reg. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978)). The Sacketts meet this "minimal" threshold for demonstrating that the federal government Defendants will not adequately represent their interests, for five related reasons.

First, the Sacketts and EPA are adverse parties in pending litigation over whether the Clean Water Act applies to their property. *See Sackett v. EPA*, case no. 19-35469 (9th Cir.). As a result, the government's interest in avoiding a return to the old rules, under which they will continue to regulate the Sacketts' property, is quite different from the Sacketts' interest in avoiding that outcome. That alone shows that the Defendants will not adequately represent the Sacketts' interests with respect to the proper scope of the Act.

Second, the federal government is motivated by broad public interest and as a result, is not capable of representing the private interests of the Sacketts in this case. *See Utah Ass'n*, 255 F.3d at 1255 (10th Cir. 2001) (noting that the government is more focused on "broad public interests") (collecting cases). As private landowners whose ability to develop, use, and enjoy their residential property is shaped by and depends on the challenged regulations, the Sacketts have direct interests in this case that the general public lacks. The federal government will not give the same consideration to these interests as will the Sacketts, given the need to balance other political and policy concerns. *See Utahns for Better Transp.*, 295 F.3d at 1117 (quoting *Utah Ass'n*, 255 F.3d at 1255) ("We have repeatedly pointed out that . . . the government's prospective task of protecting 'not only the interest of the public but also the private interest of the petitioners in intervention' is 'on its face impossible' and creates the kind of conflict that 'satisfies the minimal burden of showing inadequacy of representation.'").

Third, the Sacketts anticipate that they will defend the Rule's definition of "adjacent wetlands" on different grounds than EPA and the Army. For instance, EPA and the Army are likely to defend the 2020 Rule on grounds that maximize their discretion going forward, to preserve agency power. *See* 85 Fed. Reg. 22,250, 22,263 (Apr. 21, 2020) (describing the rule's changes to the scope of wetland regulation as an exercise of agency judgment and discretion); *see also* Opposition to Plaintiffs' Motion for Preliminary Injunction at 10-16, *California v. Wheeler*, No. 3:20-cv-03005-RS (N.D. Cal. June 1, 2020), ECF No. 106 at 20-26 (separate lawsuit where EPA and the Army have defended the Navigable Waters Protection Rule by arguing for *Chevron* deference). The Sacketts, by contrast, will argue that the Rule's definition of "adjacent wetlands" is legally compelled by Supreme Court precedent—namely, the controlling plurality opinion in *Rapanos*. 547 U.S. at 715 (plurality op.); *see also* M. Reed Hopper, *Running Down the Controlling Opinion in* Rapanos v. United States, 21 U. Denv. Water L. Rev. 47 (2017-2018). Unlike EPA and the Army, the Sacketts take the position that the Clean Water Act and Supreme Court precedent not only permit the 2020 Rule's narrowed regulatory definition of "adjacent wetlands," they require it.

Fourth, EPA and the Army's institutional interests do not align with the Sacketts' interests. EPA and the Army's inconsistency as to the issues raised in this case creates serious doubts as to their ability to steadfastly advance the Sacketts' interests. In its definition of regulated wetlands, the challenged Rule expressly reverses earlier rules issued by the very same agencies. Indeed, some of these conflicting rules are of recent vintage. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019); 80 Fed. Reg. 37,054 (June 29, 2015). Given the vicissitudes of agency politics and changing Administrations, there is considerable doubt that EPA and the Army would represent the interests

of the Sacketts throughout the course of litigation. *See WildEarth Guardians*, 573 F.3d at 997 (recognizing "that government policy may shift" in finding inadequate representation of applicants' interests by the government).

Fifth, as private landowners who are directly affected by the regulatory scheme at issue, the Sacketts provide an important perspective that is currently absent from the case. *Cf. Utah Ass'n*, 255 F.3d at 1255 (stating that the minimal inadequacy showing "is met when the applicant for intervention has expertise the government may not have"). In a case otherwise litigated between state and federal government agencies, the Sacketts bring knowledge and perspective regarding the on-the-ground effects of Clean Water Act regulations and regulatory definitions on private landowners. Should the Navigable Waters Protection Rule's definition of "adjacent wetlands" be enjoined or set aside, and the prior rules restored, the Sacketts' property would remain subject to an ongoing dispute over federal permitting jurisdiction. Thus, they can bring important knowledge and an element of immediacy otherwise lacking from the defense.

## II.     In the Alternative, the Sacketts Satisfy the Standard for Permissive Intervention

If the Court denies the Sacketts' motion to intervene as of right, it should alternatively grant them permission to intervene pursuant to Rule 24(b). On timely motion, the Court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996). District courts have broad discretion to grant intervention under the permissive standard. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("[P]ermissive intervention is a matter within the sound discretion of the district court."). "To permissively intervene, a party need not have a direct personal or pecuniary

interest in the subject of the litigation." *San Juan Cty.*, 503 F.3d at 1207; *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940). Rather, a party who raises a question of law or fact in common with main action should be allowed to intervene as long as doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Sacketts' defense of the challenged rule raises questions of law or fact in common with Colorado's claims and EPA and the Army's defenses. For instance, the argument that Supreme Court precedent compels the Rule's definition of regulated wetlands raises a question of law—whether Justice Scalia's plurality opinion or Justice Kennedy's concurring opinion in *Rapanos v. United States* controls—that is also raised by Plaintiffs' complaint. *See* Compl. ¶¶ 1, 5-7, 35, 56-57, 92-93, 95. And because the Sacketts have sought early intervention, it will not unduly prejudice any of the parties nor result in significant disruption or delay. Fed. R. Civ. P. 24(b)(3). Therefore, were the Court to conclude that the Sacketts lack a right to intervene, it should allow intervention permissively under Rule 24(b).

## CONCLUSION

The Sacketts should be granted intervention of right or, in the alternative, should be granted permissive intervention.

DATED:  June 3, 2020.

<div style="margin-left: 40%;">

s/ Glenn E. Roper
GLENN E. ROPER
Pacific Legal Foundation
1745 Shea Center Drive
Suite 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
E-mail: geroper@pacificlegal.org

ANTHONY L. FRANÇOIS
CHARLES T. YATES
Pacific Legal Foundation
930 G Street
Sacramento, CA 95814
Telephone: (916) 419-7111
E-mail: afrancois@pacificlegal.org
E-mail: cyates@pacificlegal.org
*Attorney for Proposed Defendant-Intervenors*
*Chantell and Michael Sackett*

</div>

**CERTIFICATE OF SERVICE**

I certify that on June 3, 2020, I served the foregoing **UNOPPOSED MOTION TO INTERVENE** upon all parties herein by e-filing with the CM/ECF system maintained by the court:

Annette M. Quill
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6264
Fax: 720-508-6032
Email: annette.quill@coag.gov

Carrie Elizabeth Noteboom
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6285
Email: carrie.noteboom@coag.gov

Eric R. Olson
Colorado Attorney General's Office-Dept.of Law
Ralph Carr Judicial Building
1300 Broadway
10th Floor
Denver, CO 80203
720-508-6548
Email: eric.olson@coag.gov

Jennifer H. Hunt
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6215
Email: jennifer.hunt@coag.gov

Phillip Roark Dupre
U.S. Department of Justice-DC-#7611
Environment and Natural Resources Division
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
202-616-7501
Fax: 202-514-8865
Email: phillip.r.dupre@usdoj.gov

Sonya Joy Shea
U.S. Department of Justice-Denver-ENRS
Environment & Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
303-844-7231
Fax: 303-844-1350
Email: sonya.shea@usdoj.gov

s/ Glenn E. Roper
GLENN E. ROPER