**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01461-WJM

THE STATE OF COLORADO,

    Plaintiff,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY;
ANDREW WHEELER, in his official capacity as Administrator of the U.S. Environmental Protection Agency;
U.S. ARMY CORPS OF ENGINEERS; and
R.D. JAMES, in his official capacity as Assistant Secretary of the Army for Civil Works,

    Defendants.

# UNOPPOSED MOTION TO INTERVENE OF PROPOSED BUSINESS INTERVENORS

Pursuant to Federal Rule of Civil Procedure 24(a), the American Farm Bureau Federation; American Petroleum Institute; American Road and Transportation Builders Association; Chamber of Commerce of the United States of America; Leading Builders of America; National Alliance of Forest Owners; National Association of Home Builders; National Cattlemen's Beef Association; National Corn Growers Association; National Mining Association; National Pork Producers Council; National Stone, Sand, and Gravel Association; Public Lands Council; and U.S. Poultry & Egg Association (collectively, the "proposed Business Intervenors") respectfully move the Court for an order permitting them to intervene as-of right in the above-captioned matter as defendants. Alternatively, the proposed Business Interventions move for permissive intervention

1

pursuant to Federal Rule of Civil Procedure 24(b). The proposed Business Intervenors concurrently submit their proposed Answer in Intervention, Attachment 1, their proposed Opposition to the State of Colorado's Amended Motion for a Preliminary Injunction (Dkt. 24), Attachment 2, and the Declaration of Don Parrish ("Parrish Dec."), Attachment 3.

## D.C.COLO. L. CIV. R. 7.1 CERTIFICATION

Counsel for the proposed Business Intervenors certify that they conferred with the existing parties regarding the present motion. On June 3, 2020, counsel for Defendants stated that they do not oppose this motion, and counsel for Plaintiff stated that they take no position.

## INTRODUCTION

Colorado's Complaint challenges a final agency action by the Environmental Protection Agency and the U.S. Army Corps of Engineers (together, the "agencies") promulgating a definition of Waters of the United States ("WOTUS") within the meaning of the Clean Water Act ("CWA"). *See* The Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("2020 Rule"). The proposed Business Intervenor trade groups represent the parties directly regulated by this definition: countless businesses that own or use land for a broad variety of business purposes including farming, ranching and other livestock production, forestry, manufacturing, mining of all types, oil and gas production and refining, power generation, road and other infrastructure construction, and home and commercial building, and which between them represent a large portion of the Nation's economic activity.[1] Conducting

---

[1] *See* American Farm Bureau Federation, https://www.fb.org; American Petroleum Institute, https://www.api.org; American Road & Transportation Builders Association, https://www.artba.org; U.S. Chamber of Commerce, https://www.uschamber.com; Leading Builders of America, https://leadingbuilders.org; National Alliance of Forest Owners, https://nafoalliance.org; National Association of Home Builders, https://www.nahb.org; National

these businesses often requires determining if property includes waters of the United States subject to CWA jurisdiction and hence to CWA permitting requirements and the threat of criminal and civil liability if activity occurs in WOTUS without a permit. The 2020 Rule corrects years of regulatory uncertainty under which these parties previously operated, replacing unclear or bloated standards with bright lines. Parrish Dec. ¶¶ 43-48. Because their members stand to be significantly harmed if Plaintiff succeeds before this Court in its suit to enjoin or vacate the 2020 Rule, the Business Intervenors seek to intervene as Defendants. They are singularly situated to explain the harms that enjoining the 2020 Rule would cause to American industry and bring substantial experience regarding WOTUS jurisdiction.[2]

The 2020 Rule culminates more than five years of multiple administrative rulemakings and varied litigation, in which the proposed Business Intervenors have participated at every step, by submitting comments on every proposed rule (*see* Parrish Dec. ¶ 14, n.3), and litigating for a lawful, reasonable standard since the Administration issued a regulatory definition of WOTUS in 2015. *See* Clean Water Rule:  Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"). Proposed Business Intervenors, among other things:[3]

---

Cattlemen's Beef Association, https://www.ncba.org; National Corn Growers Association, https://www.ncga.com; National Mining Association, https://nma.org; National Pork Producers Council, http://nppc.org/about-us; National Stone, Sand, & Gravel Association, https://www.nssga.org; Public Lands Council, publiclandscouncil.org; U.S. Poultry & Egg Association, https://www.uspoultry.org (all sites last visited May 18, 2020).

[2]  Plaintiff does not seek relief solely as to Colorado, but asks this Court to vacate, set aside, and enjoin the 2020 Rule "in its entirety." Compl. p. 45. Accordingly, the proposed Intervenors' experience throughout the Nation is highly relevant.

[3]  Not every proposed Intervenor has been a party in each one of the cases described below, but each of the Business Intervenors has been involved in some of those cases, and most of the Business Intervenors have been involved in all of them as either a party or an *amicus*.

- Challenged the jurisdiction of the U.S. Court of Appeals for the Sixth Circuit to hear consolidated petitions for review of the 2015 Rule, obtained certiorari from the Sixth Circuit's decision that it had jurisdiction, and then prevailed on the merits in the Supreme Court on their argument that those challenges (and now challenges to the 2020 Rule) belong in the first instance in district courts. *See Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617 (2018).

- Filed suit in the U.S. District Court for the Southern District of Texas, arguing that the 2015 Rule was unlawful and inconsistent with the text of the CWA because it covers a staggering amount of land that Congress never intended to reach and also was procedurally defective under the Administrative Procedure Act. The District Court agreed that the 2015 Rule was procedurally defective and remanded the Rule to the agencies. *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019).

- Filed suit in the District of Oklahoma to challenge the 2015 Rule. Compl., *Chamber of Commerce v. EPA*, No. 15-cv-386 (N.D. Okla. July 10, 2015) (Dkt. 1), on appeal sub nom. *Oklahoma v. EPA*, 19-5055 (10th Cir. 2016).

- Intervened as plaintiffs in the Southern District of Georgia to challenge the lawfulness of the 2015 Rule, and obtained a ruling that the Rule was both substantively and procedurally defective and a remand of the Rule to the agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019).

- Intervened as defendants and obtained dismissal on standing grounds of claims in the Western District of Washington challenging the 2015 Rule's provisions as to

4

        waste water treatment facilities. Order, *Puget Soundkeeper All. v. McCarthy*, No. 2:15-cv-1342 (W.D. Wash. Nov. 25, 2019) (Dkt. 103).

- Intervened as defendants in suits by States and environmental organizations in the Southern District of New York and District of South Carolina that challenged regulatory efforts to delay enforcement of the 2015 Rule. *See* 83 Fed. Reg. 5200 (Feb. 6, 2018) ("Applicability Date Rule"); *S.C. Coastal Cons. League ("SCCCL") v. Pruitt*, 2018 WL 2184395 (D.S.C. May 11, 2018); Order at 2, *New York v. Pruitt*, No. 1:18-cv-1030 (S.D.N.Y. Apr. 5, 2018) (Dkt. 57); Order at 2, *Nat. Res. Def. Council v. EPA*, No. 1:18-cv-1048 (S.D.N.Y. Feb. 6, 2018) (Dkt. 48).

- Intervened to defend a 2019 Rule repealing the 2015 Rule. *See* 84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule"); Order, *S.C. Coastal Conservation League v. Wheeler*, No. 2:19-cv-3006 (D.S.C. Feb. 19, 2020) (Dkt. 33).

In other words, the proposed Business Intervenors have been at the very heart of litigation over the 2015 Rule and subsequent delay and repeal efforts. *See* Parrish Dec. ¶¶ 6-18.

        These prior cases are closely interconnected with the current challenge to the 2020 Rule. Each considers the legality of administrative actions regarding the same provisions of the CWA defining the scope of federal jurisdiction and the same long history of rulemaking and judicial decisions. Each addresses the lawful scope of the agencies' authority under the CWA to regulate land and waters, and affects the ability of industry and private parties, like proposed Business Intervenors' members, to use their land without obtaining a CWA permit. As several courts recognized in granting many of the same proposed Business Intervenors' motions to intervene, the proposed Business Intervenors and their members "have a substantial stake in the outcome" of

litigation determining the regulatory definition of WOTUS, in part because "the industries that these business groups represent operate in a regulatory sphere that include regulations governing water usage in the United States." *SCCCL*, 2018 WL 2184395, at *8-9; *see also* Order at 2, *New York*, No. 1:18-cv-1030 ("the industry groups have demonstrated a serious economic interest in the [WOTUS] rule, as it regulates discharge into waterways").

The same is true here. The lawsuit before this Court will determine under which regulatory regime the proposed Business Intervenors' members must operate. And Plaintiff's ultimate objective—and the logical result of enjoining the 2020 Rule (which Plaintiff claims "shrinks federal jurisdiction far below" that of the 2015 Rule and the pre-2015 regime (Compl. ¶ 5))—is to return to a broader definition of WOTUS and greater federal regulation.[4] Accordingly, as Plaintiff's allegations show, a ruling in favor of Plaintiff would subject private parties like the proposed Business Intervenors' members to more burdensome regulatory requirements and inhibit their productive use and enjoyment of their lands. Further, were Plaintiff to succeed on its claim that the 2020 Rule is an illegal interpretation under the CWA (*id.* ¶¶ 90-95), or arbitrarily disregards prior practices and findings allegedly requiring a broader scope (*id.* ¶¶ 96-105), any such holding would have direct bearing on the tangled web of litigation regarding the lawful scope of the agencies' jurisdiction, a question present in each and every WOTUS-related suit, including

---

[4] Plaintiff assumes (*e.g.*, Compl. p. 45) that striking down the 2020 Rule will reinstate the 2008 Guidance (because the Repeal Rule repealed the 2015 Rule), but the Repeal Rule has been challenged in multiple courts, *see* p. 9, n.6, *infra*. As a result, it is unclear whether the 2015 Rule or 2008 Guidance would ultimately be in effect (or where, given the injunctions entered against the 2015 Rule). Either prior regime would harm Intervenors' members compared to the 2020 Rule, because each creates broader and more uncertain federal jurisdiction.

the pending Repeal Rule suit in South Carolina in which most of the Business Intervenors are intervenor-defendants.

The Court should therefore grant Movants leave to intervene to protect their interests in this and other related litigation. The motion is timely; the proposed Business Intervenors, as owners or users of land for a huge variety of business purposes, have regulatory and economic interests in the agencies' action that will be impaired if they cannot defend it; and the agencies, as neutral regulatory bodies, cannot represent the interests of the regulated business community with the same perspective and vigor. The Business Intervenors believe that their experience operating under the CWA and various regulatory regimes implementing it, and their close involvement in every stage of recent rulemaking and litigation, will be helpful to the Court in resolving this case. The motion to intervene as of right or permissively accordingly should be granted.[5]

## BACKGROUND

The 2015 Rule purported to "clarify" the definition of WOTUS within the meaning of the CWA. 80 Fed. Reg. at 37,054. Because the agencies' regulatory jurisdiction extends to "waters of the United States" and no more, the definition of WOTUS establishes the scope of the agencies' regulatory jurisdiction under the CWA. The sweeping reach of the 2015 Rule stood to significantly impair business operations; thus, many of the proposed Business Intervenors (along with various coalitions of States) challenged the legality of the 2015 Rule through original suits and also litigated the lawfulness of the 2015 Rule or aspects of that rule as intervenors in various forums.

---

[5]     As "interven[ors] in support of defendants in the trial court," the proposed Business Intervenors "d[o] not need to establish standing." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950–51 (2019).

As a result of these challenges, various courts issued regional preliminary injunctions guarding against application of the 2015 Rule in more than half of the States. *See* Order, *Am. Farm Bureau Fed'n v. EPA*, No. 3:15-cv-165 (S.D. Tex. Sept. 12, 2018) (Dkt. 87); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1364-65 (S.D. Ga. 2018); *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D.N.D. 2015). The Southern District of Texas and Southern District of Georgia both ultimately held that the 2015 Rule violated the procedural requirements of the APA. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019); *Texas v. EPA*, 389 F. Supp. 3d 497 (S.D. Tex. 2019). The Southern District of Georgia further held that the 2015 Rule is inconsistent with the CWA. *Georgia*, 418 F. Supp. 3d at 1381-82. Both of those courts remanded the Rule to the agencies in light of the ongoing administrative process to repeal and replace the 2015 Rule, keeping their previously issued preliminary injunctions in place. *Id.*; 389 F. Supp. 3d at 506.

While the litigation was ongoing, the agencies proposed to repeal and replace the 2015 Rule in a "comprehensive, two-step process." *See* 82 Fed. Reg. 34,899, 34,899 (July 27, 2017). The first step of this comprehensive process would "rescind" the 2015 Rule, restoring the status quo ante by regulation. *Id.* "In a second step," according to the agencies, the government would "conduct a substantive reevaluation of the definition of 'waters of the United States.'" *Id.* During the ongoing rulemaking, the 2015 Rule entered effect in the jurisdictions that did not issue preliminary injunctions to guard against it, and thus American businesses were forced to operate under a patchwork regulatory scheme. Parrish Dec. ¶¶ 18-19.

The agencies published the final Repeal Rule in the Federal Register on October 22, 2019. 84 Fed. Reg. 56,626. The Repeal Rule was immediately subject to legal challenge by States and environmental groups in district courts across the United States, including in an action before the

8

District of South Carolina in which proposed Business Intervenors successfully intervened. Compl., *SCCCL v. Wheeler*, No. 2:19-cv-3006 (D.S.C. Oct. 23, 2019) (Dkt. 1).[6]

The agencies published the final 2020 Rule, the subject of this action, on April 21, 2020. Plaintiff filed this Complaint seeking declaratory and injunctive relief on May 22, 2020 (Dkt. 1), and an Amended Motion for a Preliminary Injunction on June 1, 2020 (Dkt. 24). To protect against the serious harms that an injunction against the 2020 Rule would cause to their members' livelihoods, productive use of their land, and ability to conduct business (*see* Parrish Dec. ¶¶ 49-58), as well as the impact that any adverse ruling would cause to the Business Intervenors' pending WOTUS cases and ability to litigate for a lawful definition of WOTUS, the Business Intervenors filed the present motion to intervene.[7]

## ARGUMENT

### A.   Proposed Business Intervenors Are Entitled to Intervene as of Right.

Pursuant to Rule 24(a)(2), the district court must grant leave to intervene where (1) the application is timely; (2) the movant "'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest;'" and (3) existing parties do not

---

[6]   Additional challenges to the Repeal Rule include: Compl., *Chesapeake Bay Found., Inc. v. Wheeler*, 1:20-cv-1064 (D. Md. Apr. 27, 2020) (Dkt. 1); Compl., *New York v. Wheeler*, No. 1:19-cv-11673 (S.D.N.Y. Dec. 20, 2019) (Dkt. 1); Supp. Am. Compl., *Washington Cattlemen's Ass'n v. EPA,* No. 2:19-cv-00569 (W.D. Wash. Dec. 20, 2019) (Dkt. 60); Compl., *Murray v. Wheeler*, No. 1:19-cv-01498 (N.D.N.Y. Dec. 4, 2019) (Dkt. 1*); Compl., New Mexico Cattle Growers' Ass'n v. EPA*, No. 1:19-cv-988 (D.N.M. Oct. 22, 2019) (Dkt. 1); Supp. Compl., *Pierce v. EPA*, No. 0:19-cv-2193 (D. Minn. Oct. 22, 2019) (Dkt. 12).

[7]   The 2020 Rule is challenged in district courts across the country. The Business Intervenors have additionally moved to intervene to defend their interests in two of those cases. *See California v. Wheeler*, 3:20-cv-03005 (N.D. Cal. May 1, 2020); *SCCCL v. Wheeler*, No. 2:20-cv-01687 (D.S.C. Apr. 29, 2020). Those motions are pending.

adequately represent that interest. *WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992, 995–96 (10th Cir. 2009) (quoting Fed. R. Civ. P. 24(a)(2)). The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). The proposed Business Intervenors meet each requirement for intervention as Defendants as of right under Rule 24(a).

          1.     *The proposed Business Intervenors' motion to intervene is timely.*

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). Under any reasonable application of these criteria, the proposed Business Intervenors' motion is timely.

The litigation is in its infancy. The present motion comes less than three weeks after Plaintiff filed its Complaint. *See* Dkt. 1. Intervention at this early stage will result in no prejudice. The proposed Business Intervenors submit with this motion an opposition to Plaintiff's preliminary injunction motion, the same date that the agencies' opposition is due. They also will file and respond to dispositive motions on the same schedule as the agencies. On the other hand, denying intervention would prevent the applicants from participating to protect their significant interest in the scope of CWA jurisdiction. Under all three criteria, the Business Intervenors' motion is timely. *See, e.g.*, *W. Energy All.*, 877 F.3d at 1165 (holding intervention timely two months after Complaint filed); *Utah Ass'n of Ctys.*, 255 F.3d at 1250 (allowing intervention two and a half years after Complaint filed where case not yet ready for trial).

      2.     *The Proposed Business Intervenors Have a Legally Protectable Interest that May be Impaired Or Impeded By This Litigation.*

"'The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant.'" *WildEarth Guardians*, 573 F.3d at 995 (quoting *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013)). The burden of showing impairment of a substantial legal interest is "minimal": "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Id.* The proposed Business Intervenors possess a practical interest that stands to be impacted by this litigation for at least two reasons. First, the definition of WOTUS, the issue at stake in this litigation, dictates the regulatory scheme under which their members must operate. An unfavorable ruling would both heighten their regulatory burdens and thrust them back into the regulatory chaos that the 2020 Rule corrects. Second, the outcome of litigation may adversely impact their ability to protect their members' interests in related WOTUS litigation.

      a.     As regulated parties subject to the 2020 Rule who stand to face heightened costs, burdens, and interference with business activities on their land should Plaintiff succeed, the proposed Business Intervenors possess a significant, legally protected interest in defending it. *WildEarth Guardians*, 573 F.3d at 995–96 (interests impaired where business operations would be "impaired, or even halted," if plaintiffs succeeded); *Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest").

The outcome of this litigation stands to impose costs on and directly affect the interests of proposed Business Intervenors' members in their property. *See* Parrish Dec. ¶¶ 43-58. The proposed Business Intervenors and their members own or operate on real property and must comply with the CWA's prohibition against unauthorized "discharges" into any areas that are deemed jurisdictional. *Id.* ¶¶ 9, 20-21. The CWA subjects them to criminal penalties and civil suits for failure to comply. If, as Plaintiff requests, this Court holds the 2020 Rule an "illegal" and "impermissible" application of the CWA because it "categorically excludes" waters from the Act's jurisdiction that Colorado thinks should be covered (Compl. ¶ 93), the agencies' jurisdiction would grow and the Business Intervenors' members would face greater regulatory burdens. Each would be required to comply with a broader definition of WOTUS and the CWA's prohibition against unauthorized "discharges," under which many members may be required to obtain costly permits to conduct business or abandon some projects altogether. Parrish Dec. ¶¶ 49-58.

Additionally, a ruling in favor of Plaintiff would eliminate the clarity that the 2020 Rule provides through bright line exemptions, replacing it with uncertainty that imposes costs on the Business Intervenors' members. *See id*. In promulgating the 2020 Rule, the agencies explained that the Rule "is intended to establish categorical bright lines that provide clarity and predictability for regulators and the regulated community." 85 Fed. Reg. at 22,325. A declaration that the 2020 Rule is unlawful would deprive the proposed Business Intervenors of those intended benefits.

b. Given the proposed Business Intervenors' long history of advocating for a reasonable, bright line definition of WOTUS such as that contained in the 2020 Rule (Parrish Dec. ¶¶ 9-18), and Plaintiff's stated objective of enjoining the 2020 Rule, the proposed Business Intervenors have demonstrated a sufficient interest that may be impaired by the litigation. The

12

proposed Business Intervenors have participated in the litigation regarding the lawful scope of the regulatory definition of WOTUS under the CWA at virtually every stage and in many courts, including the United States Supreme Court. *Id.* They have consistently argued against a definition of WOTUS that violates the Constitution and unlawfully expands the agencies' regulatory jurisdiction under the CWA, and explained the need for regulatory predictability and consistency and a uniform approach, rather than a regulatory definition that imposes significant and unjustified costs on their members. *Id.* The 2020 Rule is the long-awaited conclusion of the agencies' efforts to repeal and replace the 2015 Rule with lawful and clear standards. A ruling in favor of Plaintiff will roll back regulatory gains that the proposed Business Intervenors have fought for years to obtain for the benefit of their members.

Further, the outcome of this litigation will impact the litigation in which most of the Business Intervenors participate to defend the 2019 Repeal Rule. A final judgment here will bear directly on the issues involved in that litigation; and the scope of any final judgment in this Court may further complicate the regulatory landscape in ways relevant to the relief being considered in Repeal Rule suits. The outcome here could also conflict with decisions in other challenges to the 2020 Rule in district courts in California and South Carolina, in which the Business Intervenors have motions to intervene pending ruling. And any ultimate restoration of the 2015 Rule would also affect the Business Intervenors' suits involving that Rule in courts around the country, which either remain open or may need to be revived under Federal Rule Civil Procedure 60(b). Courts, including the Tenth Circuit, recognize that intervention is warranted under such circumstances. *See Utah Ass'n of Ctys*, 255 F.3d at 1254 ("'the *stare decisis* effect of the district court's judgment is sufficient impairment for intervention'") (quoting *Coal. of Ariz./N.M. Ctys. v. Dep't of Interior*,

13

100 F.3d 837, 844 (10th Cir. 1996)); *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986) ("an interest in preventing conflicting orders may be sufficient for intervention as of right"); *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265-66 (2d Cir. 1984) ("there is a significant likelihood that the ultimate resolution of this litigation will lead to . . . conclusions of law on issues of first impression, or mixed findings of fact and law, . . . which would control any subsequent lawsuit by the intervenors").

> 3.  *The Agency Defendants Do Not Adequately Represent the Proposed Business Intervenors' Interests*

The proposed Business Intervenors cannot rely on the agencies to represent their interests. Where, as here, "the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenors but the public generally," the proposed intervenor's burden of showing inadequate representation is "minimal," and "easily made." *WildEarth Guardians*, 573 F.3d at 997; *see also Utahns for Better Transp.*, 295 F.3d at 1117 (The Tenth Circuit has "repeatedly recognized" that relying on governmental entities to protect both the public and the private interest "creates the kind of conflict that 'satisfies the minimal burden of showing inadequacy of representation'"). Certainly, the agencies' interests in the management of natural resources is not concomitant with the interests of the proposed Business Intervenors' in using their land for productive economic purposes. That is enough.

In addition, the Tenth Circuit has "recognized that government policy may shift." *WildEarth Guardians*, 573 F.3d at 996. There is a risk that a change in Administration or policy could undermine the agencies' resolve to defend the merits of the 2020 Rule—exactly what happened in litigation regarding the 2015 Rule before the Southern District of Georgia and the Southern District of Texas. In both litigations, the agencies ultimately took no position regarding

14

the merits of the 2015 Rule because of the agencies' ongoing rulemaking, such that only intervenor-environmental parties briefed those issues on summary judgment. *See* Opposition to Summary Judgment, *Texas v. EPA*, No. 3:15-cv-162 (S.D. Tex. Nov. 8, 2018) (Dkt. 170); Opposition to Summary Judgment, *Georgia v. Wheeler*, No. 2:15-cv-0079 (S.D. Ga. Oct. 10, 2018) (Dkt. 215). The proposed Business Intervenors also believe that their experience in the prior litigation, and their singular ability to brief issues related to the harm to American businesses and industry, will assist the Court in resolving this action. *See Utahns for Better Transp*., 295 F.3d at 1117 (recognizing that trade association can provide expertise that government may be lacking).

### B. Alternatively, the Proposed Business Intervenors Should Be Allowed to Intervene Permissively.

Rule 24(b) provides that a court may allow a party to intervene if it "has a claim or defense that shares with the main action a common question of law or fact" and intervention will not cause undue delay or prejudice. Fed. R. Civ. P. 24(b). It cannot be seriously disputed that the defenses the proposed Business Intervenors seek to bring will involve common questions of law and fact regarding the agencies' obligations under the CWA and the APA. Permitting the proposed Business Intervenors to intervene to defend the 2020 Rule would also allow them to vindicate their substantial interests and, given their prompt action, would neither delay this case nor prejudice any of the parties.

### CONCLUSION

For the foregoing reasons, the proposed Business Intervenors respectfully request that the Court grant the motion to intervene.

Dated this 8th day of June, 2020.  /s/ *Timothy S. Bishop*
Timothy S. Bishop
Brett E. Legner
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 701 7829
Facsimile:  (312) 706 8607
Email: tbishop@mayerbrown.com
Email: blegner@mayerbrown.com

Colleen M. Campbell
Mayer Brown LLP
1999 K Street NW 20006
Washington, DC
Telephone: (202) 263 3413
Facsimile: (202) 263-3300
ccampbell@mayerbrown.com

*Attorneys for proposed Business-Intervenors Defendants*
American Farm Bureau Federation; American Petroleum Institute; American Road and Transportation Builders Association; Chamber of Commerce of the United States of America; Leading Builders of America; National Alliance of Forest Owners; National Association of Home Builders; National Cattlemen's Beef Association; National Corn Growers Association; National Mining Association; National Pork Producers Council; National Stone, Sand, and Gravel Association; Public Lands Council; and U.S. Poultry & Egg Association

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:


Annette M. Quill
E-mail: annette.quill@coag.gov

Carrie E. Noteboom
E-mail: carrie.noteboom@coag.gov

Eric R. Olson
E-mail: eric.olson@coag.gov

Jennifer H. Hunt
E-mail: jennifer.hunt@coag.gov

Phillip Roark Dupre
E-mail: phillip.r.dupre@usdoj.gov

Sonya J. Shea
E-mail : sonya.shea@usdoj.gov

Anthony Lee François
E-mail afrancois@pacificlegal.org


*/s/ Timothy S. Bishop*
TIMOTHY S. BISHOP