**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01461-WJM-NRN

THE STATE OF COLORADO,

    Plaintiff,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY;
ANDREW WHEELER, in his official capacity as Administrator of the U.S. Environmental Protection Agency;
U.S. ARMY CORPS OF ENGINEERS; and
R.D. JAMES, in his official capacity as Assistant Secretary of the Army for Civil Works,

    Defendants.

**SUPPLEMENTAL BRIEF IN SUPPORT OF AMENDED MOTION FOR
PRELIMINARY INJUNCTION**

Colorado respectfully answers the Court's questions [ECF Doc. No. 57] below.

## I. Discharges under a federal Section 404 permit do not violate the Colorado Water Quality Control Act.

The Colorado Water Quality Control Act requires a permit for all discharges of pollutants, but considers federal permits, including Section 404 permits, as valid discharge permits. *See* COLO. REV. STAT. ("C.R.S.") §§ 25-8-501(1) (stating "each permit issued pursuant to the federal act shall be deemed to be a temporary permit issued under this article which shall expire upon expiration of the federal permit"). Therefore, discharges of pollutants like fill material into state waters under a federal Section 404 permit do not violate the state Water Quality Control Act.

This is underscored by the Clean Water Act's ("the Act") separate and distinct treatment of dredged and fill materials under Section 404 and point source pollutants under Section 402. The federal Act provides that states can administer either (or both) programs regulating these different pollutants by 1) meeting certain federal requirements under the Act; and 2) receiving approval from EPA of the state program. 33 U.S.C. §§ 1342(b); 1344(g), (h); *see also* 40 C.F.R. Part 233 (setting forth requirements to assume Section 404 permitting authority). Nearly all states, including Colorado, administer the Section 402 permit program for point source discharges with EPA approval.[1] *See* 40 Fed. Reg. 16,713 (April 14, 1975) (granting Colorado's request for approval of its program for controlling discharges of pollutants to navigable waters under Section 402(b) of the Act). By contrast, nearly all states, also including Colorado, rely on the Corps to administer the Section 404 program and have not created a comprehensive state

---

[1] https://www.epa.gov/npdes/npdes-state-program-information.

program or sought EPA approval of such a program.[2]

The authority to regulate dredge and fill activities under federal law remains with the Corps unless a state goes through this formal process. Because Colorado has not done so, its role in the Corps-administered 404 program is defined under Section 401 of the Clean Water Act, which authorizes states to review federally issued permits to certify whether the permitted activities comply with state water quality requirements. 33 U.S.C. § 1341; *see also* C.R.S. § 25-8-202(1)(i.5) (authorizing regulations to govern Section 401 certifications).

Because Colorado has received EPA approval for permitting of Section 402 point source discharges, the Colorado Water Quality Control Act authorizes the Water Quality Control Commission to adopt rules and regulations for issuing water quality discharge permits to fulfill the state's delegation requirements under Section 402 of the federal Act. But discharges of dredge and fill material that are regulated under Section 404 do not require a Section 402 permit. 40 C.F.R. § 122.3(b). Therefore, discharges to Colorado's state waters that comply with a Corps Section 404 permit are not prohibited under state law because they are authorized under a federal permit issued under the federal Act.

33 U.S.C. § 1344(t), cited in the Court's order [ECF Doc. No. 57], does not apply here. This provision was added to the Act in response to court cases holding that federal facility discharges, including the Corps' own dredging projects, were not subject to state oversight under the Section 402 point source program or the Section 401 water quality certification process. *See Minnesota v. Hoffman*, 543 F.2d 1198 (8th Cir. 1976), *cert. denied,* 430 U.S. 977 (1977); *EPA v.*

---

[2] To date, only New Jersey and Michigan have assumed full administration of the federal 404 permitting program. https://www.epa.gov/cwa-404/state-or-tribal-assumption-cwa-section-404-permit-program.

*Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200 (1976), overturned by statute as noted in *U.S. v. Com. of P.R.*, 721 F.2d 832, 834 (1st Cir. 1983); *see also* John Michael Chamberlain, *State Regulation of Federal Dredging Projects*, 3 Hastings W.-N.W.J. Envtl. L. & Pol'y 165, 170-71 (1995). Here, Colorado does not currently have separate state permitting requirements for Corps dredge and fill projects,[3] so the requirement of Section 1344(t) that "each such agency shall comply with such State or interstate requirements both substantive and procedural to control the discharge of dredged or fill material" creates no additional obligation.

In sum, parties with a Section 404 fill permit do not violate the Colorado Water Quality Control Act when they discharge fill into "state waters," and thus there is no basis for state-law enforcement action against such discharges.

**II.     Colorado retains enforcement discretion under state law but would suffer significant environmental harm from unpermitted fill discharges and unrecoverable economic harm from halted development projects.**

If the 2020 Rule goes into effect, Colorado's enforcement authority would not prevent significant environmental harm and would not enable otherwise-permissible development projects to proceed.

The federal Section 404 permitting program administered by the Corps in Colorado allows for the discharge of dredged or fill material into waters of the United States under a robust federal regulatory scheme. Permit applicants must describe the likely pollutants; show that they have taken steps to avoid impacts to aquatic ecosystems; minimized potential impacts; and

---

[3] Colorado has historically not issued 401 certifications for Corps dredge fill projects because such projects have not been conducted under individual section 404 permits, which triggers Colorado's 401 certifications.

3

provided for compensatory mitigation for all remaining unavoidable impacts. *See* 40 C.F.R. §§ 230.10(a) and (d), 230.70-77, 230.91-98. The Colorado Water Quality Control Act contains no such requirements for persons seeking to discharge dredge-and-fill pollutants, as noted above.

Some state waters have, of course, always been beyond the reach of federal jurisdiction under the 2008 Guidance and, therefore, not subject to the requirement to obtain a Section 404 permit. However, the broad 2008 Guidance that defines "waters of the United States" to include waters with a significant nexus to traditionally navigable waters creates a sufficiently protective regime for Colorado's waters because any significant project generally requires a Section 404 permit. The State has used its enforcement discretion to address the limited unauthorized discharges of fill material into state waters where it believes that water quality will be adversely impacted. *See, e.g.*, *In the Matter of Harvey Steamboat P'ship*, No. SO-110816-1, ¶ 42 (Colo. Dept. of Pub. Health and Env't, Aug. 16, 2011), 2011 WL 3702172 (requiring, in the context of a stormwater point source enforcement action, remediation of sediment and other pollutant discharges from the project); *see Massachusetts v. E.P.A.*, 549 U.S. 497, 527 (2007) (noting that an agency has "broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities").

Because the scope of potential unauthorized discharges into nonjurisdictional state waters under the 2008 Guidance has been relatively small compared to waters falling under the Corps' Section 404 jurisdiction, this enforcement effort has required relatively few resources to date. But under the 2020 Rule, Colorado will suddenly find itself with approximately 54 percent of its watershed area unprotected by the federal Section 404 permit program, without any state dredge and fill permit program to replace it. *See* Klein Decl. [ECF Doc. No. 29], ¶ 13; Rowan Decl.

4

[ECF. Doc. No. 32], ¶ 12. While nothing compels the State to begin enforcing against non-permitted discharges after the 2020 Rule goes into effect, Colorado cannot exercise its enforcement discretion in response to the sudden narrowing of the federal Section 404 permitting process without creating significant harm to Colorado's environment and stopping otherwise-appropriate development from proceeding. *See* Amended Motion for Preliminary Injunction [ECF Doc. No. 24] at 8-10; Reply in Support of Amended Motion for Preliminary Injunction [ECF Doc. No. 55] at 3-4.

Without a permitting process in place, Colorado will not know of planned activity likely to result in the discharge of pollutants or what steps parties will to take to reduce or mitigate such pollution, requiring even more resources to enforce. Colorado does not have—and without new legislation, will not have—the resources or staffing to undertake a mass enforcement effort aimed at these newly unpermitted discharges without having a dramatic impact on its entire clean water compliance and enforcement program. Rowan Decl. [ECF. Doc. No. 32], ¶ 15. Without the information-forcing process of a permitting program, some parties will move forward with dredge-and-fill projects on the expectation that Colorado will not catch them, presenting a significant risk of environmental harm. At the same time, other projects, likely including some crucial infrastructure and other development projects, will not move forward without a dredge and fill permit, harming Colorado and its residents. *Id*. ¶¶ 11-14; Pierce Decl. [ECF. Doc. No. 31], ¶ 29.

Colorado's enforcement discretion cannot address the resource shortage that the new rule creates to enforce state law and protect Colorado's waters or the inability of state law to lawfully permit appropriate development to continue. Both constitute irreparable harm.

Respectfully submitted this June 18, 2020.

PHILIP J. WEISER
Attorney General

*s/ Carrie Noteboom*
ERIC R. OLSON*
CARRIE NOTEBOOM*
ANNETTE M. QUILL*
JENNIFER H. HUNT*
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720-508-6285
FAX: 720-508-6032
E-Mail: eric.olson@coag.gov;
carrie.noteboom@coag.gov;
annette.quill@coag.gov;
jennifer.hunt@coag.gov
*Counsel of Record

Attorneys for the State of Colorado

# CERTIFICATE OF SERVICE

I certify that on the 18th day of June, 2020, I served the foregoing SUPPLEMENTAL BRIEF IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION upon all parties herein by e-filing with the CM/ECF system maintained by the court:

| Attorneys | Parties Represented |
|---|---|
| Sonya J. Shea<br>Devon Lehman McCune<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>Environmental Defense Section<br>999 18th Street – South Terrace, Suite 370<br>Denver, CO 80202<br>Telephone:    (303) 844-7231<br>                      (303) 844-1487<br>Email: sonya.shea@usdoj.gov<br>           devon.mccune@usdoj.gov<br><br>Phillip R. Dupré<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>Environmental Defense Section<br>P.O. Box 7611<br>Washington, DC 20044<br>Telephone:    (202) 616-7501<br>Email: phillip.r.dupre@usdoj.gov | Defendants U.S. Army Corps of Engineers, U.S. Environmental Protection Agency, Andrew Wheeler, and R.D. James |
| Timothy S. Bishop<br>Brett Emerson Legner<br>Mayer Brown LLP-Chicago<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Telephone:    (312) 781-0600<br>                      (312) 701-8090<br>Email: tbishop@mayerbrown.com<br>           blegner@mayerbrown.com<br><br>Colleen M. Campbell<br>Mayer Brown LLP-DC<br>1909 K Street, N.W.<br>Washington, DC 20006-1101 | Potential Intervenor Defendants American Farm Bureau Federation, American Petroleum Institute, American Road and Transportation Builders Association, Chamber of Commerce of the United States of America, Leading Builders of America, National Alliance of Forest Owners, National Association of Home Builders, National Cattlemen's Beef Association, National Corn Growers Association, National Mining Association, National Pork Producers Council, National Stone, Sand, and Gravel Association, Public Lands Council, and U.S. Poultry & Egg Association |

| | |
|---|---|
| Telephone:     (202) 263-3413<br>Email: ccampbell@mayerbrown.com | |
| Glenn E. Roper<br>Pacific Legal Foundation-Highlands Ranch<br>1745 Shea Center Drive<br>Suite 400<br>Highlands Ranch, CO 80129<br>Telephone:     (720) 344-4881<br>Email: geroper@pacificlegal.org<br><br>Anthony Lee Francois<br>Pacific Legal Foundation-Sacramento<br>930 G Street<br>Sacramento, CA 95814<br>Telephone:     (916) 419-7111<br>Email: afrancois@pacificlegal.org | Potential Intervenor Defendants Chantell Sackett and Michael Sackett |

*s/ John Watson*
John Watson